533 P.2d 547

Glenn O. MASSIE, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Duval Sierrita Corporation, Respondent Employer,

Duval Sierrita Corporation, Respondent Carrier.

No. I CA–IC 1048.

Court of Appeals of Arizona,
Division 1,
Department C.

March 27, 1975.

Rehearing Denied May 2, 1975.

Review Granted June 3, 1975.

Gilbert Gonzalez, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent Duval Sierrita Corp.

## OPINION

STEVENS, Judge.

The basic question before the Court is:

The extent of the authority granted to The Industrial Commission of Arizona by A.R.S. § 23–1061(J).

Glenn O. Massie (petitioner) sustained an industrially related accident on 15 May 1971 while working for Duval Sierrita Corporation (employer), a self-insured employer. The petitioner was on a ladder, his position being approximately 12 feet off the ground, when he was struck on the left leg by a heavy object and knocked to the ground landing on the lower portion of his back. Although in pain the petitioner lost no compensable time from work. Ap-

proximately two months after the accident he "developed a real severe burning in my left leg." On 28 August 1971 he was seen by Otto A. Backus, M.D., who recorded as his diagnosis "lumbrosacral sprain. Possible medial miniscus." Dr. Backus referred the petitioner to Larry I. Mann, M.D., an orthopedic surgeon. Dr. Mann first saw the petitioner on 9 September 1971 and he became the petitioner's attending physician. Dr. Mann referred the petitioner to Stuart I. Holtzman, M.D., whose specialty is rehabilitative medicine and electromyography. When asked to explain electromyography Dr. Holtzman stated that, very generally, "electromyography is more the area of the acute problem, using electrical diagnosis with a particular type of machine for determining problems of the neuromuscular system, the nerves and muscles through his body."

Dr. Holtzman performed the electromyography (EMG) which Dr. Mann had requested and rendered his report to Dr. Mann.

Dr. Mann continued his care of the petitioner with conservative treatment and the petitioner could not sense any improvement. Dr. Mann's 9 March 1972 report of his 6 March 1972 examination is as follows:

> "Claims he is worse. Complains of pain in both ankles, arches and feet. Patient is unhappy with my care as I can't find anything wrong with him. Is not getting any better. Is argumentative and belligerant. Wishes to get another doctor to find out what's wrong with him. Advised him to see another doctor if he wishes, as, in fact I am unable to find anything definitely wrong with this patient."

On 13 March 1972 the employer, through its service representative, Sweet & Crawford, issued a Notice of Claim Status terminating medical benefits as of 6 March 1972 stating that the claimant was discharged without permanent disability and that there was no loss from work in excess of 7 days attributable to his injury. On the same day the petitioner wrote to the Commission requesting a change of doctors. The Commission advised the petitioner that it would not act on the request for change for the reason that medical benefits had been terminated by the notice of claim status.

The petitioner made a timely request for a hearing which request was directed to the notice of claim status. A hearing was held on 23 June 1972 with Dr. Mann and the petitioner as the only witnesses. The hearing officer rendered his decision and award for continuing benefits on 13 July 1972. We quote from the award:

> "4. That the testimony of the applicant established that he has not missed any work due to the injury, however, he is unable to perform as a mechanic as well as before the injury before of persistent pain in the small of his back and a burning sensation in the area of his left thigh and left knee.
>
> "5. The testimony of Dr. Mann established that, although he is unable to find any objective signs which he considers outstanding or significant, the applicant has consistently had the same complaints and the doctor would recommend that he see another physician."

The hearing officer's award continued in effect the petitioner's entitlement to medical, surgical and hospital benefits from the date of the injury until his condition becomes stationary and his right to compensation from the date of the injury until his condition becomes stationary. This award became final.

Whether by direction of the hearing officer or by consent of the employer is not clear from the file, but on 1 August 1971 the petitioner was first seen by Lawrence M. Haas, M.D., an orthopedic surgeon. The petitioner was last seen by Dr. Haas on 15 August. Dr. Haas continued conservative treatments and scheduled the petitioner's next appointment for 22 September 1972. This appointment was not kept.

On 15 September 1972 the petitioner first saw Richard L. Reilly, D.O. Dr.

Haas and Dr. Reilly both rendered reports and an employer's Notice of Claim Status was issued on 18 October 1972 stating:

"Deny liability for treatment rendered by Dr. Reilly from and after September 15, 1972. Claimant did not keep his appointment with Dr. Haas, attending physician, for September 22, 1972. Mr. Massie is directed to arrange an early appointment with Dr. Haas."

A copy of this notice of claim status was sent to the petitioner and to both Dr. Haas and Dr. Reilly.

The petitioner did not return to Dr. Haas and continued under the care of Dr. Reilly who called in John W. McCracken, D.O., a neurosurgeon, for consultation. Dr. McCracken first saw the petitioner on 26 October 1972 on which day an EMG was performed. On the following day a lumbar myelogram was performed. Together, Drs. Reilly and McCracken recommended a lumbar laminectomy. It was discovered that the petitioner had a diabetic condition and the surgery was postponed until 10 November to permit this condition to be brought under control.

With this diagnosis and with the recommendations of Dr. Reilly and Dr. McCracken in mind, the petitioner wrote to the Commission on 6 November 1972 as follows:

"I am writing to request a change of doctors. I went to see Dr. Lawrence Haas as instructed and for 2 other visits all I got was the same treatment I received from Dr. Mann. I was submitted to a whole new set of X rays and told to lose weight and exercise and return in 30 days. When I protested the long delay, Dr. Haas agreed to see me in 2 weeks. After 2 visits in this manner, I decided it was no use to see Dr. Haas as he was doing exactly as Dr. Mann had done absolutely nothing. I am therefore requesting that I be allowed to visit my own family doctor, Dr. Richard L. Reilly for treatment and examination. *I have gone to him on my own and now know that I have a ruptured disk pinching a nerve that is the cause of troubles. Surgery is required to correct this condition.*

"I am writing this letter at the instruction of George B. Marble, Hearing Officer in my case before the Commission here in Tucson."

(Emphasis Added).

Swett & Crawford by letter dated 9 November wrote to the Commission stating:

"This will acknowledge receipt of a copy of Mr. Massie's letter dated November 6, 1972, requesting a change of physicians. We do not feel that his request should be granted. He has already been under the care of two other specialists, Drs. Mann and Haas.

"We will, however, arrange for a consultation board to include a neurosurgeon."

The file does not reflect that a copy of the letter was sent to the petitioner. Surgery was performed on 10 November by Dr. McCracken with Dr. Reilly assisting. In describing the surgery which was performed, after X rays had been ordered, Dr. McCracken testified:

"Patient was taken to surgery on the 10th of November, at which time the lumbar laminectomy was performed. It was a partial hemi-laminectomy at L4–5 and L5–S1 level with excision of a herniated nucleus pulposus at the same levels."

A record of Commission action was issued in Phoenix on 24 November 1972 which denied the request for a change of doctors stating in part:

"The applicant's request of November 6, 1972 does not appear to justify a change of doctors * * *.

"IT IS FURTHER ORDERED that if any party is aggrieved by this notice they may apply for a hearing of the same, by filing written application therefor at any office of the Industrial Commission of Arizona, within FIVE (5) DAYS after the mailing of this notice."

A copy of this action was received by the petitioner at his home in Tucson during his recovery period following the surgery.

The petitioner took no action in relation to the 24 November record of Commission action. He testified that it was his opinion that his 6 November letter was a proper request directed to the 18 October 1972 notice of claim status.

The petitioner was without counsel until he employed his present counsel on 20 December 1972. By a series of letters, counsel urged that the Commission require the payment of compensation and medical expenses in relation to the surgery. During this exchange of correspondence Swett & Crawford, by letter dated 26 December 1972, advised the petitioner's counsel:

"Since Mr. Massie was not authorized to contact any doctor other than Lawrence M. Haas, M.D., we are not in a position to pay his medical bills other than to Dr. Haas. Neither are we in a position to pay compensation as requested."

The Commission treated the letter requests which had been sent by the petitioner's counsel as a petition for a hearing pursuant to A.R.S. § 23–1061(J) which reads as follows:

"J. The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing pursuant to § 23–941 within sixty days after receiving notice of such impropriety."

The Commission directed that a hearing be conducted and one was held on 8 March 1973 and 24 April 1973. Drs. Holtzman, Reilly and McCracken testified. The file does not reflect a copy of Dr. Holtzman's report to Dr. Mann. Dr. Holtzman testified that his EMG examination revealed abnormalities which he felt were significant and that he could not exactly interpret their meaning. He testified that the abnormalities were bilateral, very uncommon and confusing at the L4–5 root level. It was his opinion that the EMG most likely disclosed a "fragmentation of the disk or extrusion of the nucleus pulposus" and that he felt that a myelogram would be justified. When asked with reference to the Dr. McCracken surgery at the L4–5 level, Dr. Holtzman testified that such was in keeping with his diagnosis. He also recognized that the final decision rested with Dr. Haas, the attending orthopedic surgeon.

At the conclusion of the presentation of the evidence on 24 April 1973 the employer requested a further continued hearing for the taking of the testimony of Dr. Haas who had been timely subpoenaed and was unable to appear. The hearing officer granted the request. Prior to the opportunity of taking Dr. Haas's testimony the hearing officer terminated the taking of the evidence. In his decision he analyzed A.R.S. § 23–1061(J). He concluded that the key words in this section are that the petitioner must be "entitled" to medical benefits and compensation and that the refusal to pay them was "improper." He concluded that there could be no entitlement absent a voluntary assumption of these obligations by the carrier or an award thereof. It was the opinion of the hearing officer that both were absent. The hearing officer further concluded that the 24 November 1972 Commission action denying the request for the change from Dr. Haas to Dr. Reilly had become final and *res judicata* thus rendering the proceedings a collateral attack which is beyond the scope and authority of A.R.S. § 23–1061(J). In these holdings he sustained the employer's position. In denying both the recovery for the medical and surgical expenses, as well as the claimed right for post surgical compensation, the hearing officer held that his ruling applied only to the A.R.S. § 23–1061(J) proceedings and "does not make final dispositon of all of the aspects of his (the petitioner's) claim."

In their testimony Drs. Reilly and McCracken reviewed their treatment, diagnosis, the surgery and the recovery period.

Arising out of the postoperative care Dr. McCracken testified that:

"It was felt that the patient might have a torn medial miniscus of the left knee. At the time it was felt that the patient should be evaluated by an orthopedist regarding the possible need for an arthrogram and possible surgery."

It is noted that the report of Dr. Backus in relation to the 28 August 1971 examination makes a somewhat similar observation. Dr. McCracken expressed the opinion that the pain incident to the petitioner's other problems may not have alerted the petitioner to that particular problem until after the spinal surgery and the relief incident thereto.

By terminating the hearing before receiving the testimony of Dr. Haas, the employer was deprived of the privilege of securing the opinion of Dr. Haas as to his interpretation of the diagnostic procedures of Drs. Reilly and McCracken and his opinion as to Dr. McCracken's report of surgery, as well as any other matters which the employer might have desired to present. We observe that the employer probably does not feel imposed upon by being deprived of the privilege of presenting the testimony of Dr. Haas if it be that the decision of the hearing officer stands.

*A.R.S. § 23–1061(J)*

In his careful consideration of the meaning of A.R.S. § 23–1061(J) the hearing officer noted an absence of case law and adopted a strict construction of that code section, which appeared in our statutes for the first time in the extensive 1968 revision of the Workmen's Compensation Law. So far as this Court is informed the case under consideration is one of first impression in Arizona with reference to this code section.

■ It appears to this Court that the processing of workmen's compensation claims is becoming more and more technical rendering the establishment of rights more difficult for the unwary, the workman who represents himself, as well as creating problems for the wary, the attorney who is knowledgeable in this specialized field of human rights. This Court disagrees with the strict construction followed by the hearing officer. We hold that this section is a remedial section, possibly as Rule 60 of the Rules of Civil Procedure, 16 A.R.S., is remedial. This section grants to the Commission the authority to review prior procedures on a request which has been presented without excessive delay and in appropriate cases to relieve a party from the technical effect of prior apparently final decisions. This opinion is consistent with Parsons v. Bekins Freight, 108 Ariz. 130, 493 P.2d 913 (1972); Chavez v. Industrial Commission of Arizona, 111 Ariz. 364, 529 P.2d 1181 (31 December 1974), and Janis v. Industrial Commission of Arizona, 111 Ariz. 362, 529 P.2d 1179 (31 December 1974). This does not mean that the Commission is at liberty to disregard established rules but that it may recognize exceptional situations.

■ The petitioner was informed by the 13 July 1972 award that his claim was still viable. This award came into being as follows: On 13 March 1972 the carrier issued a Notice of Claim Status which carried a 60-day clause and terminated the petitioner's benefits. On 21 March 1972 the petitioner followed Commission Rule 6, 1 September 1970 edition, by using a Commission form requesting a hearing. This rule states in part that proper forms approved by the Commission "shall be used in all instances by all interested parties where they are prescribed." The petitioner also wrote his 13 March 1972 letter requesting a change of doctors which request, apparently without formal Commission action, was granted. Thus, he was familiar with the Notice of Claim Status, a formal form of request for hearing, the conduct of the hearing and a successful informal request for a change as to his attending physician.

On 6 November 1972 he again requested a change of physicians by letter, apparently after conferring with an Industrial Com-

mission hearing officer, and proceeded to undergo surgery. This time, after the completion of the surgery, he received the 24 November 1972 record of Commission action denying his request for a change of physicians, which Commission action bore a 5-day clause. The Court has searched for the authority for a 5-day clause. We have not found such authority in the Commission rules, unless it arises by implication from Rule 6 in that the form used as the record of Commission action bears a notation that the form had been approved by the Commission. A.R.S. § 23–947 is entitled "time within which hearing must be requested." Until the 10-day provision was added in 1974, A.R.S. § 23–947 only specified a 60-day period. By this comment we do not express an opinion as to the validity of time periods not expressed in A.R.S. § 23–947 or the Rules of the Commission. Possibly the hearing officer and the Commission will give consideration to this short time period and the petitioner's circumstances at the time he received the 24 November 1972 record of Commission action in the matter of the presence or absence of excessive delay. These comments are inserted recognizing that these precise issues are not expressly presented to the Court. They are inserted in view of our holding that the award must be set aside.

After the Commission reviewed the letters which were written by the petitioner's counsel, the Commission reviewed the file as evidenced by its 21 February 1973 communication to Robert D. Steckner, the Chief Hearing Officer. This communication contained as the final paragraph, "it appears to the Commission that the issues relative to the claimant's entitlement, if any, to compensation benefits can only be resolved through the hearing process and the matter is therefore referred to your attention for appropriate handling." Thereby the Commission exercised the discretion which had been granted to it by A.R.S. § 23–1061(J) and directed that the petitioner's problems be set for a hearing for a factual and legal determination as to whether the petitioner was "entitled" to medical benefits and compensation and for a holding as to whether the withholding thereof was "improper." By his strict construction of A.R.S. § 23–1061(J) the hearing officer did not reach the merits of the petitioner's claim.

We hold that on an application which is presented without excessive delay, a matter which we do not decide in this case, and a proper showing, the Commission was empowered to review the 24 November 1972 record of Commission action denying the request of the petitioner for leave to change from Dr. Haas to Dr. Reilly. We recognize that the employer has the right to secure medical opinions from doctors of its own choice, A.R.S. § 23–908(E), and that the petitioner's choice of physicians and care is not without limitations, A.R.S. §§ 23–1026(A) and 23–1070(E). Commission Rule 13(B), 1 September 1970 edition, provides that "except as provided by law, an injured employee will not be permitted to voluntarily change from one hospital to another, or from one physician to another, without the written authorization of the insurance carrier or the Commission."

By this opinion we recognize the right of the employer to present its evidence and arguments as to why it should not be required to pay for the professional services of Drs. Reilly and McCracken and as to why it should not be required to pay compensation to the petitioner for his disabilities incident to the surgery and the industrial accident. In setting aside the award in question the whole matter assumes the posture of a trial *de novo* and the employer's right as a self-insured employer remain intact.

This decision goes no further than to say that on the face of the record presented to us a full factual hearing should have been held and a decision should have been reached by the hearing officer giving consideration to this Court's ruling as to the import of A.R.S. § 23–1061(J). We have reviewed Yanochik v. Industrial Commission of Arizona, 22 Ariz.App. 503, 528 P. 2d 1262 (1974), and are of the opinion that

**342**

the factual basis in relation to the claimed right to change physicians differs from that set forth in Yanochik.

The award is set aside.

NELSON, P. J., concurs.

WREN, Judge (dissenting).

I believe the Court's construction of A.R.S. § 23–1061(J) to be erroneous. According to the majority opinion, if a claimant appears to have a meritorious position, and the delay is not excessive, then his untimeliness in protesting Commission action may be waived. In effect, the Court states that the Commission may now apply the principles of Parsons, *supra*, Janis, *supra*, and Chavez, *supra*, pursuant to statutory authority.

In my opinion, the hearing officer properly construed § 23–1061(J) when he found that before this section becomes applicable, a workman must first show that he is entitled to benefits. That is, he must establish that benefits are owing to him pursuant to an award or voluntary acknowledgement by the carrier. The section then becomes operative to compel payment of benefits improperly withheld.

The decision rendered today approves the view that whenever a workman chooses to disregard the prescribed time limitations set forth in the Act and Rules of the Commission, § 23–1061(J) can be used as a vehicle for relief. I do not believe such to be the legislative intent of this section.

I also disagree with the Court's determination that petitioner has made a "proper showing" entitling him to be relieved from the res judicata effects of the Commission order denying his request for a change of physician.

A.R.S. § 23–1070(E) grants to the Commission discretion to order such a change requested by a claimant. In pertinent part, the section states:

"If the medical, surgical or hospital aid or treatment being furnished by an employer is such that there is reasonable ground to believe that the *health, life or recovery of any employee is endangered or impaired thereby*, the commission may . . . order a change of physicians or other conditions." (Emphasis added).

In my opinion, the evidence would not warrant the setting aside of the Commission award. *See* Yanochik v. Industrial Commission, 22 Ariz.App. 503, 528 P.2d 1262 (1974).

I would affirm the award.